**Gary WELSH, Petitioner-Appellant,**

v.

**Larry MIZELL, Warden, Vienna Correctional Center, Vienna, Illinois, and Tyrone C. Fahner, Attorney General of the State of Illinois,\* Respondents-Appellees.**

No. 80–1862.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1981.

Decided Jan. 12, 1982.

Rehearing and Rehearing En Banc Denied Feb. 10, 1982.

---

\* William J. Scott, one of the original defendants, was succeeded by Tyrone C. Fahner. See Rule 25(d) of the Federal Rules of Civil Procedure.

Jerold S. Solovy, Laura A. Kaster, Brigitte Schmidt Bell, Jenner & Block, Chicago, Ill., for petitioner-appellant.

Ronald Lee Bell, Asst. Atty. Gen., Tyrone C. Fahner, Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and BAUER, Circuit Judge.

CUMMINGS, Chief Judge.

Gary Welsh is a prisoner at the Illinois Correctional Center in Vienna, Illinois. The murder of which he was convicted was committed in 1962, but Welsh was not competent to stand trial until 1973. At that time he was sentenced in the Circuit Court of McHenry County to a prison term of sixty to one hundred years. His direct appeal was denied, *People v. Welsh*, 30 Ill.App.3d 887, 333 N.E.2d 572 (2d Dist. 1975). He has served his minimum sentence, with allowance for statutory good time, in several state mental hospitals and in prison. He has been denied parole nine times.

In March 1980 Welsh filed a *pro se* petition for a writ of habeas corpus. He contended that Illinois' statutory and regulatory parole criteria had changed significantly between 1962, when he committed his crime, and 1973, when new legislation took effect. In 1962 the emphasis had been on preventing further crimes by the particular candidate for parole (special deterrence). The 1973 criteria reflected instead a philosophy of general deterrence—that a prisoner should not be paroled so long as his incarceration might deter other potential offenders. The application of the new parole criteria to him, Welsh argued, contravened the *ex post facto* clause of the United States Constitution.[1]

The district court dismissed Welsh's petition on the motion of the Attorney General of Illinois. Judge Beatty reasoned that the changes in parole criteria were procedural and that procedural changes do not violate the *ex post facto* clause when they "operate only in a limited and unsubstantial manner to [the petitioner's] disadvantage." May 22, 1980 order, p. 2 (quoting *Beazell v. Ohio*, 269 U.S. 167, 170, 46 S.Ct. 68, 69, 70 L.Ed. 216). He assumed that the Parole and Pardon Board (now the Illinois Prisoner Review Board) had always had broad discretion to grant or deny parole and that Welsh therefore could not show how the changed provisions caused him cognizable harm. *Id.* at 3. This appeal followed. For the reasons set out below, we reverse and remand to the Illinois Prisoner Review Board, with instructions to give prompt consideration to Welsh's parole application under the statute and regulations applicable in 1962.

### The Doctrine of Exhaustion of Remedies Is Inapplicable.

We are met at the threshold by a jurisdictional question. The state has argued, although the point was not pressed on appeal, that Welsh's petition should be dismissed for failure to exhaust state remedies. There are two reasons for not requiring exhaustion. First, the state has expressly waived it. In urging this Court to deny Welsh's motion for a stay, the state claimed to have shown by its original motion to dismiss that "although petitioner had not gone to the state courts for relief * * * it would have been futile for him to do so" (emphasis added).[2] Second, even without the state's waiver, sending Welsh back to the state courts would be an exercise in futility, which federal habeas procedure allows us to pretermit. An Illinois appellate court has recently rejected a challenge identical to Welsh's, *Harris v. Irving*, 90 Ill.App.3d 56, 45 Ill.Dec. 394, 412 N.E.2d 976 (5th Dist. 1980), and the Illinois Supreme Court denied leave to appeal that decision on January 30, 1981. Thus "there is either an absence of available State cor-

---

1. "No State shall * * * pass any * * * ex post facto Law." U.S.Const., Art. I, § 10, cl. 1. A similar clause applies to the federal government. Art. I, § 9, cl. 3. The Illinois Constitution contains a like provision in Art. 1, § 16.

2. January 30, 1981, response to Petitioner-Appellant's Motion for Stay.

rective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner," 28 U.S.C. § 2254(b).

*The* Ex Post Facto *Clause Was Violated.*

In its most recent explication of the *ex post facto* clause, the Supreme Court has said:

> The *ex post facto* prohibition forbids * * * the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed." * * * [T]wo critical elements must be present for a criminal or penal law to be *ex post facto* : it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. *Weaver v. Graham*, 450 U.S. 24, 28, 29, 101 S.Ct. 960, 963, 964, 67 L.Ed.2d 17 (citations and footnotes omitted)

We begin our inquiry therefore by looking at the criteria for parole in effect in September 1962, when Welsh committed the crime for which he was sentenced. They were contained in Sections 6 and 7b of the Parole Law Ill.Rev.Stat.1961, ch. 38 §§ 806, 808a. Cf. Ill.Rev.Stat.1961, ch. 127 § 55b. Section 6 required the sentencing judge and the State's Attorney to transmit to the Parole Board an official statement of all "facts or circumstances which may tend to throw light on the question as to whether such prisoner * * * is capable again of becoming a law-abiding citizen." Section 7b required the Parole Board to give "due consideration and weight * * * to the record of the prisoner's conduct kept by the superintendent or warden."

The regulations issued by the Parole Board sounded similar themes. For example,

> 12. If the members of the Parole and Pardon Board in conference determine that a prisoner serving an indeterminate sentence is entitled to parole, they shall enter an order for parole. If they determine that a prisoner is not a fit person to serve his sentence outside the penitentiary, parole shall be denied, and such further order entered as in the judgment of the members is warranted.

> \* \* \* \* \* \*

> 14. In its consideration of the question of whether a prisoner should be paroled, the Parole and Pardon Board shall evaluate all the factors in each case, including the prisoner's conduct record, and grant or deny release on parole in accordance with its judgment.

Thus the focus of the Parole Board's inquiry was on the prisoner himself, as observed by the prosecuting and sentencing authorities and by prison officials. The purpose of incarceration had been served—and parole was appropriate—when the individual prisoner was deterred from engaging in further criminal activity and his conduct demonstrated his rehabilitation. The severity of the offense committed and society's concern with sufficient punishment did not enter directly into the Parole Board's decision. Those factors had already determined the minimum and maximum prison terms imposed by the sentencing judge. The minimum sentence was intended to satisfy society's desire for adequate punishment; the maximum sentence was a rough indicator of when rehabilitation could be presumed. The function of parole was to mediate between the two extremes. *People v. Moore*, 133 Ill.App.2d 827, 829, 272 N.E.2d 270, 271 (5th Dist. 1971); *People v. Lillie*, 79 Ill. App.2d 174, 178, 223 N.E.2d 716, 718–719 (5th Dist. 1967).

In 1972 the Illinois legislature enacted new parole criteria based on the Model Penal Code. These criteria, which took effect on January 1, 1973, provide for the denial of parole if:

(1) there is substantial risk that [the prisoner] will not conform to reasonable conditions of parole; or

(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or

(3) his release would have a substantially adverse effect on institutional discipline. Ill.Rev.Stat.1973, ch. 38 § 1003–3–5(c) (Ill.Rev.Stat.1979, *id.*)

Criteria (1) and (3) invite the Parole Board to look at many of the same factors as under previous law. Criterion (2), however, is a marked departure, importing for the first time into the parole decision considerations of retributive justice (the relationship between time served and the nature of the offense) and general deterrence (incarceration as a means of promoting general respect for law).[3] Furthermore, the statute allows any one of the criteria to serve as a basis for parole denial. Not only is criterion (2) new, therefore, but it can also be determinative. The district court failed to recognize that Welsh's petition presented exactly that case: the Parole Board gave only the second of the three factors as its reason for denying parole,[4] and that factor could not have had decisive weight under the Board's 1962 procedures.

■ It thus appears that the change in law has worked a substantial harm to Welsh. At the time of his offense, exemplary conduct during his imprisonment might well have resulted in parole. Under the later enactment, no evidence of satisfactory rehabilitation can overcome a finding that the nature of his crime makes him a socially undesirable candidate for parole. This change satisfies both prongs of the *Weaver* test: it is retrospective and it disadvantages Welsh. It would also satisfy older, more restrictive formulations of the test for an *ex post facto* violation, which require a direct, after-the-fact enhancement

of punishment. Section 1 of the Parole Law in effect at the time Welsh committed his crime stated:

It shall be deemed and taken *as part of every sentence*, as fully as though written therein, that the Parole and Pardon Board, by and with the approval of the Governor in the nature of a release' or commutation of sentence * * * may terminate the term of such imprisonment * * * earlier than the maximum fixed by the court * * *. Ill.Rev.Stat.1961 ch. 38 § 801 (as amended by H.B.No.343, 1961, Ill.Laws) (emphasis added)

The Supreme Court has also warned that a "repealer of parole eligibility" may amount to a "greater or more severe *punishment* than was prescribed by the law at the time of the * * * offense." Sounding a pragmatic note, Justice Brennan wrote, "[O]nly an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole." *Warden v. Marrero*, 417 U.S. 653, 662–663, 94 S.Ct. 2532, 2537–2538, 41 L.Ed.2d 383 (emphasis in original; citations omitted). *Accord, Rodriguez v. United States Parole Commission*, 594 F.2d 170, 176 (7th Cir. 1979).

We find considerable support for our holding that the change from special deterrence criteria to general deterrence criteria is substantial and that the retrospective application of the general deterrence criteria violates the *ex post facto* clause. In *Weaver v. Graham, supra*, 450 U.S. 24, 101 S.Ct. 960, a Florida statute that changed the computation of "gain time credits" violated

---

**3.** This shift is illustrated by the comments of Theodore P. Fields, chairman of the Parole and Pardon Board from January 1971 to August 1972, in 62 Ill.B.J. 20, 22 (1973):

> The second statutory ground for denial breaks down into two categories of principles that exist in our system of criminal justice: "His release at that time would deprecate the seriousness of his offense" means simply, under our present standards, has the man who committed a certain crime served a reasonable enough time considering the nature of the crime. * * * The second category is that "his release at that time would ... promote disrespect for the law." This relates to the principle of deterrence. If an offender is

> released at too early a date as compared with the nature of the crime committed, others would feel there is no reason they should worry about committing such crimes because there wouldn't be much of a penalty to be suffered. * * * Also, for a viable system of criminal justice, it is necessary for the public to have confidence in and respect for the law. * * * The length of time served for particular offenses is currently one of the elements that does have an overall effect on the public in its respect for the law.

**4.** Exhibit 1 to petition for writ of habeas corpus.

the *ex post facto* clause. In *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182, legislation that amended a discretionary fifteen-year sentence to a mandatory fifteen-year term could not be given retrospective effect. In *Greenfield v. Scafati*, 277 F.Supp. 644 (D.Mass.1967) (3-judge court), affirmed, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250, legislation that made "good conduct deductions" forfeit if parole conditions were violated could only be constitutionally applied to prisoners whose crimes were committed after the statute was enacted.

In addition, several courts of appeals have held that federal parole criteria, amended in 1976 to include depreciation of the seriousness of the offense, tendency to promote disrespect for the law, and jeopardy to the public welfare, could not be applied to youthful offenders whose crimes were committed before that date. The Youth Corrections Act had, until the 1976 amendments, focused on "a mental and physical examination to ascertain [the youthful offender's] personal traits, his capabilities, pertinent circumstances of his family life, any previous delinquency or criminal experience, and any mental or physical defect or other factor contributing to his delinquency." *Shepard v. Taylor*, 556 F.2d 648, 653 (2d Cir. 1977) (summarizing 18 U.S.C. § 5014). *Accord, Marshall v. Garrison*, 659 F.2d 440, 444–446 (4th Cir. 1981); *De Peralta v. Garrison*, 575 F.2d 749 (9th Cir. 1978). While Youth Corrections Act precedents are not automatically transferrable to parole challenges by adult offenders, the changes wrought by the Illinois legislature are of a sufficient magnitude to render these cases apposite. The shift in criteria is, for example, more marked than was true in *Ruip v. United States*, 555 F.2d 1331 (6th Cir. 1977), where no *ex post facto* violation was found.[5]

There are decisions in which *ex post facto* challenges virtually identical to Welsh's have been made but without success. See,

*e.g., United States ex rel. McCalvin v. Irving*, No. 80 C 1522 (N.D.Ill.1981); *United States ex rel. Overall v. Director*, No. 74 C 2541 (N.D.Ill.1974), affirmed without opinion, 513 F.2d 634 (7th Cir. 1975); and *People v. Harper*, 27 Ill.App.3d 406, 327 N.E.2d 91 (5th Dist. 1975) (abstract).

We think the reasoning in these cases is flawed, as Judge Beatty's was here, by two misconceptions. First, the prisoner does not have to show that he had a vested right to be paroled. That showing would be necessary for a contract clause or due process challenge, but it is not relevant to an *ex post facto* claim. *Weaver v. Graham, supra*, 450 U.S. at 29–30, 101 S.Ct. at 964–965, is now dispositive on that point. Second, it is not an answer to an *ex post facto* challenge to say that parole is a matter of "legislative grace." As Judge Aldrich noted in *Greenfield v. Scafati, supra*, 277 F.Supp. 644, 646:

> It is true that parole is commonly spoken of as a matter of grace, and not of right. * * * It would be more accurate, however, to say that a prisoner's entitlement to parole lies in the discretion of the parole board. It would not follow because a prisoner might not receive parole that it would not be an unlawful ex post facto burden to deprive him altogether of the right to be found qualified.

Even discretionary decisions are made under some constraints. We hold only that the constraints on the Parole Board's discretion in Welsh's case must be those contained in the statute and regulations that were in effect in 1962, not those subsequently enacted.

### Remand to the Illinois Prisoner Review Board Is the Appropriate Remedy.

■ Welsh has argued that we should either order his immediate release, since the only ground for the most recent denial of his parole was constitutionally inapplicable, or remand his case to the Prisoner Review Board for reconsideration under the rele-

---

5. In *Ruip*, the prisoner was challenging the 1973 federal parole guidelines. Under those guidelines the United States Parole Commission identified nine personal characteristics and

six categories of offense severity. It assigned the prisoner scores for each characteristic and a rating for offense severity, and granted or denied parole based on both factors.

vant guidelines. A remand is clearly the appropriate relief. See *Weaver v. Graham, supra,* 450 U.S. at 36–37, 101 S.Ct. at 968–969, and *People ex rel. Jones v. Brantley,* 45 Ill.2d 335, 337, 259 N.E.2d 33, 34 (1970). If the Board denies parole yet again, it must— as the state acknowledges (Br. 6)—give its reasons in order to satisfy the due process requirements of *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 15, 16, 99 S.Ct. 2100, 2107–2108, 60 L.Ed.2d 668.

Reversed and remanded for further proceedings consistent herewith.