Clinton BUSH, Plaintiff

v.

Larry D. KERR, Warden, Defendant.

No. 82–C–444.

United States District Court,
W.D. Wisconsin.

Dec. 16, 1982.

Clinton Bush, pro se.

John R. Byrnes, U.S. Atty., Madison, Wis., for defendant.

## ORDER

SHABAZ, District Judge.

Petitioner, an inmate at the Federal Correctional Institution at Oxford, Wisconsin, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He challenges the actions of the United States Parole Commission in setting his presumptive parole date on a number of grounds:

1. That the Commission abused its discretion in considering information which was not true or was unreliable;

2. That the Commission applied the parole guidelines promulgated in 1976 to his offenses which predated those guidelines in violation of the *ex post facto* prohibition in the Constitution; and

3. That petitioner's equally culpable co-defendant was paroled after serving 92 months of a 23-year sentence, while petitioner will be paroled after serving 144 months of a 24-year sentence,[1] thus violating the policy of comparatively equal sentences for equally culpable conduct.

Based on the materials submitted by the parties, the facts are as follows:

## FACTS

Petitioner is incarcerated at the Federal Correctional Institution at Oxford, Wisconsin, which is in this judicial district. Respondent Larry Kerr is the Warden of this institution.

Petitioner was sentenced to 15 years imprisonment by the United States District

---

1. Since petitioner filed his petition, the Commission, after an interim hearing, has set presumptive parole after service of 133 months, citing "superior program achievement."

Court, Northern District of Indiana, on August 6, 1974, after conviction of conspiracy to distribute narcotics.[2]

Petitioner was also sentenced to a 9-year term after conviction of assault of a federal officer, in the same Court on January 17, 1975, such sentence to be consecutive to the prior 15-year sentence.[3]

Petitioner received an initial parole determination hearing on October 22, 1980. The hearing panel considered materials from several sources, including a letter from one of the Assistant United States Attorneys who prosecuted petitioner, and a letter from the sentencing judge recommending no parole. The AUSA's letter described petitioner as a high ranking member of a drug distribution network. Petitioner allegedly was an "enforcer" in this organization, known as "The Family," and was responsible for extortion and a number of murders during the early 1970's when The Family and other groups and individuals were vying for control of drug distribution in the Gary, Indiana area. Petitioner denied any involvement in extortion or murder. Although the notes of the hearing panel indicate that he admitted involvement in drug distribution and knowledge of several shootouts with competing organizations, he denies personal involvement in any shootouts or murders.

Petitioner was assigned a salient factor score of 8 and an offense severity rating of "Greatest II." The Commission's guidelines, promulgated in 1976, assign a parole guideline of 64+ months to be served before parole.[4] This guideline is open ended except, of course, for the sentence maximum. The panel recommended that the matter be referred to the regional commissioner for original jurisdiction and recommended a presumptive parole after 120 months, after considering 144 months to be proper but for the disparity with the presumptive parole date of a co-defendant.[5] In this regard, the panel notes state:

(b) Other comments: Today's panel notes that the Assistant United States Attorney and Judge both recommend against early parole. This is based on the violence surrounding this particular crime. Today's panel also notes that a co-defendant who appears to be equally culpable, Mr. Hillsman, received a 23 year sentence and reportedly will receive a presumptive parole date at 92 months which is his eligibility date. Today's panel was considering approximately 144 months for this individual but based on the co-defendant disparity, we will recommend service of 120 months or approximately 10 years on this sentence. The panel believes Mr. Bush worked his way up in this network by taking part in extortion, several drug-related murders and robberies of drug pushers. He is viewed as a somewhat dangerous individual and had it not been for his co-defendant receiving a parole at eligibility the panel would have recommended a more severe amount of time to be served. The subject by his own admission was the Number Five man in this organization and, as such, was responsible for much of its operation.

The matter was referred to the regional commissioner for original jurisdiction consideration who, in turn, referred the matter for original jurisdiction to the National Commission, and reiterated the panel's recommendation of presumptive parole after 120 months. The memorandum from the regional commissioner to the National Commission stated:

A PSI, dated July 29, 1974, says, with respect to Bush, "The defendant, code-

---

**2.** An appeal of this conviction is reported in *U.S. v. Jeffers,* 520 F.2d 1256 (7th Cir.1975). Further facts concerning the scope of the distribution appear in *U.S. v. Jeffers,* 532 F.2d 1101 (7th Cir.1976).

**3.** An appeal of this conviction is reported in *U.S. v. Hillsman,* 522 F.2d 454 (7th Cir.1975).

**4.** See 28 C.F.R. § 2.20.

**5.** The Court notes that petitioner was eligible for parole after service of one-third of his sentence, 96 months, and would be mandatorily released after service of two-thirds of his sentence, 192 months (under, and subject to the caveat in, 18 U.S.C. § 4206(d)). The 144-month period is the midpoint between the two.

fendants and others unknown to the Grand Jury would form and continue to operate an organization known as 'The Family.' The purpose of 'The Family' organization was to engage in the distribution of heroin and cocaine, controlled substances, and control the traffic in heroin and cocaine in and around the city of Gary, Indiana." In the October 2 [1980] letter from AUSA Hanning, we are informed, "Approximately 35 federal cases were prosecuted against approximately 50 defendants who were members and associates of The Family organization." Hanning describes Clinton Bush as "a high ranking member of the inner circle of The Family headed by Garland Jeffers ... In late 1971 and early 1972, Garland Jeffers, in concert with Clinton Bush and others, organized and became operational kingpin of the structured and ongoing narcotics distribution network in the Gary, Indiana area."

After discussing some other details of this organization, the memorandum continues, quoting from AUSA Hanning's letter:

"Beginning in late 1972 and continuing until early 1972, The Family organization became involved in a drug war with a smaller organization in the Gary area. Estimates of 60 to 140 deaths during that period of time have been attributed to that drug war." According to Hanning, Clinton Bush was an enforcer for The Family, staging and conducting robberies and collecting extortion money at Jeffers' direction. Hanning writes, "We had evidence and information that Bush was responsible for several deaths during the drug war. However, no homicide prosecution ever resulted; we did not use that evidence in the narcotics conspiracy case because of the possible claim of undue prejudice both to Bush and his codefendants."

The National Commission decided that petitioner should be continued to presumptive parole after service of 144 months. By Notice of Action dated January 9, 1981, petitioner was informed as to the reasons for parole denial:

Your offense behavior has been rated as Greatest II severity because you had a managerial interest in a multikilo heroin and drug trafficking operation and shot at a Federal Agent. You have a salient factor score of 8 ... You have been in custody a total of 79 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a minimum of 64 plus months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that your release at this time would depreciate the seriousness of your offense behavior. Commission guidelines for Greatest II severity cases do not specify a maximum limit. Therefore, the decision in your case is based in part upon offense behaviors and time ranges specified in the Greatest I severity category.

The notes of the meeting of the National Commissioners in this matter indicate that the codefendant disparity was noted but that an earlier date should not be considered because of "accountability on this most serious offense." Also noted was the fact that "bystander killed as result of shooting," apparently in reference to the conviction for assault on a federal officer.

Petitioner appealed this decision. The decision was affirmed except that the presumptive parole date was corrected to May 20, 1986, to reflect 144 months confinement.

Petitioner's codefendant in the assault on a federal officer charge, James Hillsman, was, in fact, paroled after 92 months, in April, 1982. Hillsman also received a 9-year sentence in the assault case consecutive to a 14-year sentence in a separate narcotics conspiracy trial arising out of the same narcotics distribution network. The Parole Commission Hearing Summary prepared in Mr. Hillsman's case is devoid of the kind of detail set forth in that of petitioner's. The panel noted specifically that "the Presentence Report in that case [the drug conspiracy conviction] is not very satisfactory." AUSA Hanning apparently did not file a recommendation, and there is no indication

that the judge did so. After considering a number of factors, including impressive institutional adjustment, the panel stated that "there is no justification for a decision above the indicated 92 months that subject must serve before parole eligibility."

Petitioner's institutional adjustment is presumably exemplary except for a number of disciplinary problems early in his confinement.

## MEMORANDUM

■■■ At the outset, this Court notes that Congress has given the Parole Commission broad discretion in granting or denying parole, and that the relief this Court could grant is limited to ordering a new parole hearing for petitioner. *Billiteri v. U.S. Board of Parole,* 541 F.2d 938 (2nd Cir. 1976). Thus, relief can be granted petitioner only if the Commission has abused its discretion. *Solomon v. Elsea,* 676 F.2d 282 (7th Cir.1982) ("The inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.").

For the reasons which will be more fully set forth in the following opinion, the Court must deny the petition for a writ of habeas corpus.

## I. EVIDENTIARY CONSIDERATIONS

This case presents the question of whether the Commission's stated reason for setting a presumptive parole after service of 144 months, "release at this time would depreciate the seriousness of your offense behavior," is rationally supported in the record.

■■■ If this rationale were used to require service of sentence in excess of the guidelines, it is possible that the statement of reasons would be statutorily insufficient. Title 18 U.S.C. § 4206(c) requires a statement of the reasons with particularity and a summary of the information relied upon. *See also: U.S. ex rel. Scott v. Ill. Parole and Pardon Board,* 669 F.2d 1185, 1189 (7th Cir. 1982); *Solomon v. Elsea,* 676 F.2d at 286. However, the Commission's action in this

case is the setting of a presumptive parole date within the guidelines, that is, prior to mandatory release when the guideline is otherwise open ended. The Commission's stated reason is constitutionally and statutorily sufficient, and is, in fact, identical to that approved in *Shoults v. Fields,* 514 F.Supp. 900 (W.D.Wis.1981).

In addition to petitioner's convictions, the evidence in the record which supports this reason, and which together support the Commission's holding that petitioner's offense severity rating is "Greatest II," apparently consists of AUSA Hanning's letter concerning the scope of the drug distribution conspiracy which petitioner characterizes as outright speculation and rumor.

It is beyond question that information supplied by the prosecutor is properly considered by the Commission in the exercise of its powers. Title 18 U.S.C. § 4207 is meant to give the Commission the broadest discretion in consideration of information.

■■■ On the other hand, it is also clear that an inmate cannot be denied parole for false, insufficient or capricious reasons. *Christopher v. U.S. Bd. of Parole,* 589 F.2d 924 (7th Cir.1978). The thrust of petitioner's argument is that AUSA Hanning's assertions about the scope of the drug conspiracy, and particularly the suggestion that petitioner was involved in murder and extortion, are not true.

■■■ The stated reasons for petitioner's parole date—that earlier parole would "depreciate the seriousness of your offense behavior" and that petitioner "had a managerial interest in a multikilo heroin and drug trafficking operation and shot at a federal agent" delineate the limits of this Court's scope of review because they are, by definition, the factors which the Parole Commission considered highly significant. *Solomon v. Elsea,* 676 F.2d at 289.

An inmate must be given the opportunity to respond to the information provided to the Commission, including the right to review the material beforehand. 18 U.S.C. § 4207 and 4208. There is no indication that petitioner was denied this right.

Petitioner's attack must be characterized as a challenge to the sufficiency of the evidence. There can be no challenge to the fact that he did shoot at a federal officer—that was exactly the offense for which he was convicted. And, of course, petitioner was also convicted of a conspiracy to distribute narcotics. His challenge is whether it was rational to conclude that he had a "managerial interest" in a "multikilo" operation. Petitioner denies both contentions.

He suggests that because no drugs were confiscated by the authorities, the size of the operation is merely conjecture. However, the conviction was for conspiracy, not possession. The facts surrounding the size of the operation cannot be denied. This Court can take judicial notice of the information presented in published cases. AUSA Hanning's letter, while a bit more detailed, states little more in this regard than the cases cited at footnote # 2 herein. That the offense involved a "multikilo" operation is a rather clear inference. There was no abuse of discretion in the Commission's conclusion.

As for petitioner's managerial interest, petitioner denies he was an "enforcer" for The Family or that he was the number five man in its hierarchy. While the information on this is not as clear, this conclusion is supported by sufficient evidence in the record. In fact, the hearing panel indicated that petitioner admitted to his role and place in the hierarchy. AUSA Hanning's letter certainly reinforces it. Concerning the scope of information to be considered by the Commission, the Court of Appeals stated:

> ... Congress has thus authorized the Commission to consider presentence reports, despite the knowledge that there are no formal limitations to their contents, that they might rest of hearsay, and that they may contain certain information bearing no relation whatsoever to the crime with which the defendant is charged. See Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969).

Solomon, 676 F.2d at 288. Petitioner has attacked the use of hearsay and inference in his case. It is clear, however, that the Commission may consider the information before it and give weight to the information as it sees fit. That petitioner had a managerial interest in the operation could have been inferred by the fact that he was tried along with the most important members of the conspiracy. Given that the standard by which the Commission is to judge conflicting evidence is the most liberal—preponderance of the evidence (see 28 C.F.R. § 2.19(c))—AUSA Hanning's letter could have provided ample reinforcement of that view. There is certainly sufficient evidence to conclude that petitioner's interest in the operation was more than minimal.

This case would be somewhat more troublesome if this Court had the power to go behind the stated reasons for petitioner's presumptive parole date and severity rating. It is clear that the contention that petitioner was involved in murder and extortion was not only considered but, at the hearing panel level, believed. The information supporting that contention is scant although this Court believes that the discretion vested in the Commission would allow it to make the conclusion based on the evidence before it. At any rate, this information was never officially used as rationale for decision.

More troublesome is the reference in the National Commission's notes that a bystander was killed in connection with the assault charge. Without going into detail about the facts surrounding this charge, suffice it to say that it is inconceivable that petitioner deserves to be saddled with any responsibility for the death. Petitioner's wrongdoing in this regard did not begin until after the bystander was shot by a federal officer. There is no indication in the record that he had anything to do with the events which led up to the death. However, there is no reason to believe that this consideration, held by at most one Commissioner, had significant impact on the ultimate decision in petitioner's case. Furthermore, the decision was independently justifiable. Finally, this Court believes that this

issue is beyond the scope of its power to review.

In conclusion, there is no indication that the Parole Commission abused its discretion in arriving at the reasons for concluding that petitioner's offense severity was "greatest II" and that his presumptive parole date should follow 144 months of incarceration.

## II. EX POST FACTO QUESTION

■ Petitioner next argues that the parole guidelines applied to him at his 1980 parole hearing violate the *ex post facto* prohibition in the constitution because his conviction predates the adoption of the guidelines. According to petitioner, the significance of the offense behavior in the guidelines, adopted in 1976, has a pre-judicial impact upon him because the pre-1976 guidelines did not allow for offense consideration, but rather relied on institutional behavior and rehabilitation evidence.

Because it is clear that the reasons given by the Commission for petitioner's parole determination rest exclusively on offense behavior, and because it appears that petitioner's institutional behavior is exemplary or superior, the Court assumes that, if petitioner's characterization of the guidelines is correct, he has shown prejudicial impact.

*Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) states that "two critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective; that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. at 964 (footnotes omitted).

It is undisputed that the post-1976 guidelines were applied to petitioner whose offenses and convictions predated that event. *Welsh v. Mizell,* 668 F.2d 328 (7th Cir.1982) leaves no doubt that this is a retrospective application of a penal statute. The other issue—whether it disadvantages petitioner—is more problematical.

In *Weaver* the Supreme Court held that a statutory reduction in the amount of "good time" credit available for periods of incarceration free of bad conduct violated the *ex post facto* clause because it "reduced the opportunity to shorten his time in prison simply through good conduct." 450 U.S. at 29–30, 101 S.Ct. at 964. The Court also pointed out that it had summarily affirmed the decision in *Greenfield v. Scafati,* 277 F.Supp. 644 (D.C.Mass.1967) (three judge court), aff'd 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), where an elimination of parole eligibility was held violative of the *ex post facto* clause, because it was one of the determinants of the length of the prisoner's sentence.

Thus, if this statutory and regulatory change worked a similar disadvantage on petitioner, he would be deserving of habeas corpus relief. In *Welsh v. Mizell,* supra, the Court of Appeals held that a change in the Illinois statutory scheme of parole had worked a significant disadvantage on that state prisoner. The Court characterized the pre-existing statutes as follows:

> The purpose of incarceration had been served—and parole was appropriate—when the individual prisoner was deterred from engaging in further criminal activity and his conduct demonstrated his rehabilitation. The severity of the offense committed and society's concern with sufficient punishment did not enter directly into the Parole Board's decision. Those factors had already determined the minimum and maximum prison terms imposed by the sentencing judge.

668 F.2d at 330. The parole criteria which were retroactively applied included the following:

> (2) his release at that time would depreciate the seriousness of his offense or promote disrespect for the law;

*Id.* The language of 18 U.S.C. § 4206(a)(1) is virtually identical and was retroactively applied to petitioner through the guidelines. As has been seen, early parole was denied petitioner for this reason exclusively, just as it was to the petitioner in *Welsh.*

However, it is clear that the Court of Appeals felt that the prior Illinois law forbade such a consideration—offense behavior

was exclusively a matter for the sentencing judge, not the parole authorities. This is not the case here.

Prior federal law on the subject was set forth at former 18 U.S.C. § 4203(a) which stated in pertinent part that parole should be granted when:

> there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion the Board such release is not incompatible with the welfare of society
> . . .

This language was generally repeated at 28 C.F.R. § 2.18. In *Garcia v. United States Bd. of Parole,* 557 F.2d 100 (7th Cir.1977), the Court of Appeals expressly held that a parole decision based exclusively on offense severity was proper under the statutory language quoted above. The Court quoted the following language from *Wiley v. United States Bd. of Parole,* 380 F.Supp. 1194, 1197 (M.D.Pa.1974):

> . . . The seriousness of the offense and the effect parole of an offender may have on deterrence of criminal conduct, embodied in the "depreciating the seriousness of the offense" reason given by the Board for denial of parole, clearly are a proper basis for denying parole since these factors are relevant to and can be determinative of the question of whether the offender's release is compatible with the welfare of society, a criterion specifically mandated by 18 U.S.C.A. § 4203. Thus, the Board is free to rely in whole or in part on these factors in making an adverse parole determination. (citations omitted)

557 F.2d at 106.[6] Thus, offense severity could not only be considered under the law in existence when petitioner was convicted, but offense conduct could be the sole consideration. In other words, the change in the law worked no disadvantage on petitioner in this respect.

It may be true that the new statutes gave added significance to the offense severity factor, but it does not appear that this has any impact on petitioner's claim. As respondent points out, the decision in *Weaver v. Graham,* supra, concerned statutes with mechanical application. The parole decision, on the other hand, has always been loaded with agency discretion. In *Garcia,* the Court of Appeals viewed the 1976 changes in this regard as merely giving sanction to the then present practice, not as adding any authority. 557 F.2d at 107.

Although petitioner does not specifically raise the issue, it appears that his offense severity, Greatest II, was a new guideline range after the 1976 statutory change. Under some circumstances, a petitioner might have a claim of being disadvantaged. However, this petitioner had a minimum sentence of 96 months (that is, one-third of his maximum) which was far in excess of the "greatest" severity classification which would have been applicable to him under the old law. This petitioner was not disadvantaged by the change.

Therefore, petitioner, while being retroactively subjected to a change in penal statutes, was not harmed thereby.

## III. CO–DEFENDANT DISPARITY

Finally, petitioner claims that his rights were violated by the fact that an equally culpable co-defendant, James Hillsman, was paroled after service of only 92 months of his 23-year sentence; that is, paroled immediately after eligibility. Petitioner is being held, after his latest interim hearing, to presumptive parole after 133 months which is 37 months later than the date of his eligibility for parole.

■ Co-defendant disparity and the concept of generally equal sentences for equally culpable conduct is doubtless a consideration within the framework of the parole statutes and regulations thereunder. How-

---

**6.** This Court believes that this language, approved by the Circuit, is also dispositive of petitioner's parenthetical assertion that the parole authorities never had authority to consider offense severity at all before 1976. According to this language, such consideration is not only allowed, but "mandated." Petitioner suggests that the reasoning of this case is "specious." Even if it were, and it is not, this Court is bound to follow the precedents in this circuit.

ever, this Court has not found a case or statute which goes so far as to state that an inmate has a right to parole at or near the time of equally culpable co-defendants. This Court must conclude that the Commission must consider this factor, but the statutes and regulations do not require the Commission to act on the issue when its decision is otherwise supported by the evidence before it. The record shows that the disparity was considered.

■ The statutes, regulations and legislative history are replete with references that they are designed with the ideal of equal terms of incarceration for substantially identical conduct in mind.[7] This Court finds nothing in the language which creates an enforceable right despite petitioner's bald assertion that such a right is created by the due process clause of the Fifth Amendment and the statutory language that forbids parole which would "depreciate the seriousness of the offense or promote disrespect of the law." Petitioner must realize that the statute concerns decisions to release, not refusals to do so. Petitioner seems to be suggesting that the Commission violated the statute when it released Mr. Hillsman. That is an opinion, one in which others might join, but it certainly does not mean that the Commission is bound to compound the violation by releasing petitioner. And nothing in the concept of due process requires petitioner's release when his co-defendant is released.

Despite petitioner's attempt to differentiate them, the cases cited by respondent support the view that there is no enforceable right to co-defendant equality. *United States v. Atkins,* 618 F.2d 366 (5th Cir.1980) was a challenge to a sentence 50% in excess of that given to co-defendants. While petitioner is correct that the case offers no background which might have supported the disparity, it is clear that the assertion of disparity raises no constitutional question. There is no reason in the context of a constitutional argument about disparity to differentiate between sentencing and pa-

role decisions. *Entrekin v. United States,* 508 F.2d 1328 (8th Cir.1975) is to the same effect. In *Page v. United States Parole Commission,* 651 F.2d 1083 (5th Cir.1981), the Court considered a challenge based on sentence disparity. It is clear from that case that the Commission should consider disparity, but that the weight given to the factor is a matter of discretion.

Finally, in *Baker v. McCall,* 543 F.Supp. 498 (S.D.N.Y.1981), the Court considered a challenge based on more lenient treatment of a co-defendant. Judge Sand in that case was also unable to find any authority for the contention that co-defendant disparity implicated the due process clause. Although, as petitioner points out, the complainant in *Baker* apparently misstated the extent of the disparity, the fact that he did so did not defeat the challenge. The nonexistence of an enforceable right did.

This Court is convinced that the disparity between co-defendants in this case is a bit extreme. The lack of information before the panel in Mr. Hillsman's case could have been the reason. There is some evidence that such is the case. Nevertheless, this Court can find no authority that requires the Commission to do more than consider the disparity along with other factors in making its decision.

## CONCLUSION

After consideration of all of the arguments and documentation presented by the parties, the Court must conclude that petitioner has stated no claim for habeas corpus relief.

Accordingly,

## ORDER

IT IS ORDERED that petitioner's petition for a writ of habeas corpus is DENIED.

---

7. See 1976 U.S.Code Congressional and Administrative News 335, 351; 18 U.S.C. § 4201 *et*

*seq.;* 28 C.F.R. § 2.1 *et seq.,* particularly § 2.20(a).