UNITED STATES of America, ex rel.
Gerald Bernard KING, Petitioner,

v.

Kenneth L. McGINNIS, Warden, and Paul J. Klincar, acting chairman, Illinois Prisoner Review Board, Respondents.

No. 82 C 6620.

United States District Court,
N.D. Illinois, E.D.

March 17, 1983.

---

Gerald Bernard King, pro se.

Michael Weinstein, Terence Madsen, Asst. Attys. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Petitioner Gerald King filed a *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 against Kenneth McGinnis, Warden of Pontiac Correctional Center, and Paul Klincar, Acting Chairman of the Illinois Prisoner Review Board ("Board"). King alleges violations of his constitutional rights in the denial of his application for parole. The cause is before the Court on cross motions for summary judgment and respondents' motion to dismiss.

King is currently serving a sentence of twenty to thirty-three years for murder. The Board refused to grant King parole in 1980, 1981 and 1982, stating in 1982 that:

> Upon careful examination of the facts and circumstances surrounding the criminal behavior which led to your incarceration, the Board feels the risk of further nonconforming behavior is too great for release at this time.

Respondents' Memorandum of Law in Support of Answer to Petition for Writ of Habeas Corpus and Motion for Summary Judgment at 6.

King asserts several grounds for relief.[1] First, he argues that the reason given by the Board for denial of parole violated the *ex post facto* prohibition. Second, King contends that the Board's statement of reasons for denial was unconstitutionally vague. He also alleges that the Board denied him due process in that it failed to comply with Ill.Rev.Stat. ch. 38, § 1003–5–1(b), which requires that an inmate be advised of factual information relied on whenever the Board makes a decision "which affects the length of the period of confinement or commitment." Finally, King claims that to deny him parole while granting it to other inmates convicted of murder violates the equal protection clause.

## I. EXHAUSTION REQUIREMENT OF 28 U.S.C. § 2254

Respondents move to dismiss King's petition on the ground that King has failed to exhaust his available state court remedies as required by 28 U.S.C. § 2254(b) and (c). Respondents argue that the questions of whether Ill.Rev.Stat. ch. 38, § 1003–5–1(b) applies to the parole denial decision and, if so, whether the criteria for denial given in this case satisfy the requirements of the state statute are matters best left to the state court. Thus, respondents urge the Court to require King to attempt to correct the alleged noncompliance with the statute through a writ of mandamus in state court.

We disagree. We do not construe King's petition as requesting relief for violation of a state statute, but read it as alleging that the parole board denied King due process in failing to comply with the statute. This constitutional claim is properly raised in a habeas corpus proceeding. *See* 28 U.S.C. § 2254(a). Furthermore, respondents have not pointed to a single case demonstrating that Illinois courts would entertain an action in mandamus to redress federal constitutional violations in the context of parole denial. Therefore, we find that King has met the threshold requirement of exhaustion of state remedies.

## II. *EX POST FACTO* CLAIM

The *ex post facto* clause prohibits enactment of any law which punishes an act not punishable at the time of its commission or enhances the punishment originally prescribed. *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). A two-part test is used to determine whether a criminal or penal law is *ex post facto:* (1) does it operate retrospectively, and (2) does it disadvantage the offender affected by it? *Id.* at 29, 101 S.Ct. at 964.

In the case at bar, King relies on *Welsh v. Mizell,* 668 F.2d 328 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982), to support his *ex post facto* claim. The *Welsh* court held that a prisoner who committed his offense prior to 1973 could not be denied parole solely on the ground that "release would deprecate the seriousness of the offense." The court found that this criterion, Ill.Rev.Stat. ch. 38, § 1003–3–5(c)(2), enacted in 1973, imported a new factor of general deterrence into the parole release process. *Welsh,* 668 F.2d at 331. Prior to 1973, Illinois law applied special deterrence criteria to parole decisions. This approach focused on the individual, giving significant weight to his behavior while incarcerated and his prospects for rehabilitation. The *Welsh* court reasoned that the parole board's reliance on the new seriousness-of-the-offense criterion as the sole basis for the denial of parole to prisoners convicted before 1973 constituted an after-the-fact enhancement of punishment. *Welsh,* 668 F.2d at 331. Citing the *Weaver* test, *Welsh* concluded that retroactive application of the new general deterrence standard disadvantaged the petitioner, resulting in an *ex post facto* violation. *Id.*

In light of *Weaver* and *Welsh,* King's *ex post facto* claim must fail. He was not denied parole solely on the basis of the seriousness of his offense. Parole was de-

---

1. We do not address the constitutionality of the Board's first two parole denials. Only the most recent denial is the proper subject of a habeas corpus petition because it is pursuant to this latest determination that petitioner remains in custody.

nied because the risk of further nonconforming behavior by King was too great for release at this time. The Board's decision notes that King's institutional record and the specifics of his crime were examined. The other explains that the nature of the offense entered into the parole decision only for the purpose of assessing its impact on King's ability to conform his behavior to the requirements of parole. *See* Ill.Rev. Stat. ch. 38, § 1003–3–5(c)(1). There is no support in this rationale for the claim that the Board considered these facts with a view toward deterring society in general from committing similar crimes. According to *Welsh,* the substantial risk criterion, unlike the seriousness-of-the-offense standard, allows the Board to consider many of the same factors as under pre-1973 law. *Welsh,* 668 F.2d at 331. Therefore, the denial of King's parole request, properly evaluated with criteria operative when he was convicted, does not violate the *ex post facto* clause. *See also United States ex rel. Burton v. Klincar,* No. 82 C 7340 (N.D.Ill. Feb. 7, 1983).

## III.  DUE PROCESS CLAIMS

■ King challenges the Board's denial of parole with two procedural due process arguments. First, he asserts that the Board's denial points to no specific facts, circumstances, or risks and thus is so vague as to violate due process. We find this argument unpersuasive.

Illinois law creates " 'a legitimate expectation of parole entitled to some measure of constitutional protection.' " *Horton v. Irving,* 553 F.Supp. 213, 217 (N.D.Ill.1982) [quoting *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, 1190 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982) ]. To determine whether a statement of reasons for denial of parole was constitutionally adequate, the court in *Scott* reaffirmed the test it had previously adopted in *United States ex rel. Richardson v. Wolff,* 525 F.2d 797 (7th Cir.1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1511, 47

L.Ed.2d 764 (1976). That test, taken from the court's opinion in *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir.), *vacated as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), was described as follows:

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision . . . and the essential facts upon which the Board's inferences are based.

*Scott,* 669 F.2d at 1191 (quoting *Johnson* ). The *Scott* court, citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), further stated that due process does not require the parole board to specify the particular evidence on which it relies. *Scott,* 669 F.2d at 1191.

Applying these rules to the case at hand, this Court finds that the Board's rationale for denying King parole satisfies due process. The Board stated:

> Your petition for parole was heard by the Prisoner Review Board on September 16, 1982. The written material in your file was reviewed, including the official statement of facts, your institutional record and verbal statements from your visitors.

> The facts in your indictment indicate that you and a codefendant planned to burglarize the apartment of Clyde Wedgwood. Upon arrival, December 24, 1969 at approximately 8:30 p.m., they found the decedent home. The codefendant entered his apartment and engaged in sexual intercourse with the decedent, an acquaintance of hers. Upon completion of the act, she left the apartment. As she

left, defendant burst into the room. Miss Myers fled and returned to a party from which both she and defendant had come. He returned a short time later. He had in his possession at that time, property of the decedent.

The Board notes your satisfactory institutional adjustment, minimum security status and parole plans.

Upon careful examination of the facts and circumstances surrounding the criminal behavior which led to your incarceration, the Board feels the risk of further nonconforming behavior is too great for release at this time. Parole is denied. Case continued until September 1983 docket.

Respondents' Memorandum of Law in Support of Answer to Petition for Writ of Habeas Corpus and Motion for Summary Judgment at 6.

The Board's statement [2] details the facts of King's crime and indicates that the Board considered this specific conduct as grounds for the conclusion that the risk of further nonconforming behavior was too great for release at this time. The Board provided both the essential facts and the grounds for its determination, thus satisfying the requirements of *Scott.*

2. We note a discrepancy between the versions of the Board's rationale supplied by petitioner and respondents. The version we consider is that provided by respondents. Petitioner's account states: "Upon careful examination of the facts and circumstances surrounding the criminal behavior is to [sic] great for release at this time." Petition for Writ of Habeas Corpus, Addendum # 10–a. Because petitioner does not object in subsequent pleadings to what would amount to an arguably significant addition by respondents, we assume that the phrase, "which led to your incarceration, the Board feels the risk of further nonconforming behavior" was erroneously omitted by petitioner.

3. It may be argued that Ill.Rev.Stat. ch. 38, § 1003–5–1(b), provides for a procedural right, namely, the right to be advised of factual information relied on by the Board in denying parole. The court in *Shango v. Jurich,* 681 F.2d 1091, 1101 (7th Cir.1982), asserted that a state procedural right is not accorded federal due process protection. However, in *Walker v.*

King's second due process argument concerns Ill.Rev.Stat. ch. 38, § 1003–5–1(b), which requires that an inmate be advised of "factual information relied upon" whenever the Board makes a decision which "affects the length of the period of confinement or commitment." The parole board's statement, as discussed above, recites the "factual information" supporting its determination to deny King parole and consequently satisfies statutory requirements. Therefore, he cannot rest a due process claim on the Board's failure to comply with state law.[3]

## IV.  EQUAL PROTECTION CLAIM

King's final basis for habeas corpus relief is equally without merit. · He claims that the Board violated his right to equal protection because it arbitrarily denied him parole while granting it to other murderers with fewer parole applications. Partially because of the largely subjective nature of parole decisionmaking, this argument has repeatedly been rejected. *United States ex rel. Burton v. Klincar,* No. 82 C 7340 (N.D.Ill. Feb. 7, 1983); *Bunting v. Longo,* No. 82 C 1011 (N.D.Ill. Sept. 30, 1982). As stated in *Greenholtz v. Inmates of Nebraska Penal and Correctional Com-*

*Prisoner Review Board,* 694 F.2d 499, 504 (7th Cir.1982), the Seventh Circuit determined that it was not required to enforce compliance with a state prison administrative regulation where compliance was not commanded by the Constitution or by statute unless the rule was intended to afford parole candidates due process. The regulation at issue in *Walker* provided a parole candidate with a right of access to all documents considered by the parole board in denying parole. The *Walker* court enforced this procedural regulation, deciding that "the State of Illinois intended to benefit parole candidates and to fulfill its due process obligations to them." *Id.* at 8 (footnote omitted).

In light of the apparent conflict between *Shango* and *Walker,* it is unsettled whether it would be proper for this Court to compel the Board to comply with Ill.Rev.Stat. ch. 38, § 1003–5–1(b). However, having concluded that the Board's rationale for denying King's parole comports with the requirements of § 1003–5–1(b), we need not reconcile the two cases.

**1348**

*plex,* 442 U.S. 1, 10, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979):

The parole-release decision ... depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release.

The Constitution does not command the parole board to treat all murderers equally simply because they were convicted of the same crime. The equal protection clause only guarantees an individual or group the right to be free from purposeful or invidious discrimination. *Shango v. Jurich,* 681 F.2d 1091, 1103 (7th Cir.1982). "A mere inconsistency in prison management may not in itself constitute a cognizable equal protection claim." *Durso v. Rowe,* 579 F.2d 1365, 1372 (7th Cir.1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Absent an allegation that the Board exercised its broad discretion in an intentionally or purposefully discriminatory manner, its more favorable treatment of some convicted murderers does not give rise to an equal protection claim. *See Herzbrun v. Milwaukee County,* 504 F.2d 1189, 1196 (7th Cir.1974).

For the foregoing reasons, respondents' motion to dismiss for failure to exhaust state court remedies is denied. However, respondents' motion for summary judgment is granted and petitioner's is denied. It is so ordered.