**James SAYLES, Petitioner-Appellant,**

v.

**George WELBORN, Warden, and Joseph McCombs, Chairman, Respondents-Appellees.**

No. 83–1346.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1983.

Decided Jan. 11, 1984.

---

Jeffrey Haas and Michael E. Deutsch, Deutsch & Hass, Chicago, Ill., for petitioner-appellant.

Michael V. Accettura, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GRANT, Senior District Judge.*

CUMMINGS, Chief Judge.

On December 17, 1982, the Illinois Prisoner Review Board decided, for the fourth time since 1980, to deny parole to petitioner James Sayles, who is incarcerated at Centralia Correctional Center, serving consecutive 100–200 year sentences for two murders committed in 1971 as well as concurrent twenty to forty-year sentences for each armed robbery committed in connection with the murders. Previously Sayles had pled guilty to and served an eighteen-month sentence for robbery and attempted murder committed in 1967 when he was seventeen years old. In response to Sayles' challenges to two of these denials, brought in federal court by means of successive petitions for writs of habeas corpus, Magistrate Cohn of the United States District Court for the Southern District of Illinois,[1] found the 1981 and the August 1982 parole denials defective and ordered new parole hearings in each case.[2] However, the magistrate found that the December 1982 fourth denial

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. The cause was referred to Magistrate Cohn for final determination with the consent of both parties pursuant to 28 U.S.C. § 636(c).

2. Sayles did not seek review of the November 1980 denial of parole and therefore it was not the subject of Magistrate Cohn's or this Court's review.

complied with constitutional requirements. Sayles appeals this decision. We affirm.

Sayles makes several arguments in his challenge to the Board's December 1982 decision to deny him parole but essentially they are all restatements of the claim that even the Board's last rationale violated this Court's holding in *Welsh v. Mizell*, 668 F.2d 328 (7th Cir.1982), certiorari denied, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186. In that case, we decided that general deterrence concerns, incorporated into Illinois parole law for the first time in 1973 (see Ill.Rev.Stat.1973, ch. 38, § 1003–3–5(c)(2), were substantially harsher than the specific deterrence criteria used exclusively in parole decisions until that time. Applying general deterrence criteria to convicts like Welsh and Sayles whose crimes were committed before 1973 was held to be a violation of the *ex post facto* clause of the United States Constitution, U.S. Const. art. I, § 9, and therefore impermissible.

 It is well settled that decisions to grant or deny parole are within the discretion of the agency created by statute to review such matters. *E.g., Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Decisions made by such an agency are not to be disturbed by the courts absent a determination that the agency abused its discretion by exceeding the constraints imposed spe-cifically by statute or generally by constitution. See *Welsh,* 668 F.2d 328. There is no basis for such a determination in this case. *Welsh* clearly required the Board to use specific deterrence criteria in deciding whether to parole Sayles, since Sayles committed the crimes for which he is incarcerated in 1971 before Illinois authorized use of general deterrence criteria. Applying specific deterrence criteria means that the Board had to evaluate the factors in Sayles' case to determine whether he was by then deterred from committing further criminal acts, rather than considering whether Sayles' further imprisonment would deter others from criminal activity.

A review of the Board's rationale for its December 17, 1982, decision[3] makes it clear that the Board in fact correctly used only specific deterrence criteria in deciding to deny parole to Sayles. Nothing in the rationale indicates that the Board considered whether denying parole to Sayles would deter the general public from committing crimes similar to his. On the other hand, the Board's reiteration of the factors it considered about Sayles himself evidences its efforts to determine whether Sayles specifically was rehabilitated and therefore deterred from such further criminal conduct. The Board weighed the facts of his criminal episodes of 1967 and 1971 against his exemplary prison conduct, his academic achieve-

**3.** The rationale for the December 17, 1982, formal denial (confirming its informal November 1982 decision not to grant Sayles parole) was as follows:

A thorough review of your file reflects that you, after having previously pled guilty to the crimes of robbery and attempt [*sic*] murder, and having served your sentence in a maximum security institution, were thereafter, in 1971, charged, tried by a jury and found guilty of the murder of two persons, a man and his wife, while engaged in the commission of yet another felony, armed robbery, during a home invasion. For these crime [*sic*] you were sentenced to terms of 100–200 years, 20–40 years, 100–200 years and 20–40 years (four concurrent, but the murder sentence involving Edith Snyder to be served consecutively to Arthur Snyder's two counts.)
These murders were especially heinous, it being described in the Official Statement of Facts that you took a claw hammer and using both sides of the head of the hammer, "beat and ripped Edith Snyder's face, skull and body apart . . . literally beat Arthur Snyder's brains out, leaving the hammer deeply imbedded in Arthur's skull", subsequently setting fire to the mattress upon which lay the dead body of Edith Snyder.
The Prisoner Review Board has considered many factors in your particular case, among which are the personal interview, the representations made by your attorneys and your wife, your lengthy term of incarceration, the fact that you are A Grade and have been involved in educational programs while incarcerated. However, in denying parole at this time, the Board feels that given your two serious departures from acceptable behaviour in the free community, the factors that weigh against your release outweigh those which would dictate your release.
(Pet.App. D)

ment, and his community and family support. The Board concluded that as positive as these latter factors were, they were not sufficient to convince the Board that Sayles was yet "capable of again becoming a law-abiding citizen." Ill.Rev.Stat.1969, ch. 108, § 203; *Welsh,* 668 F.2d at 330 (quoting Ill.Rev.Stat.1961, ch. 38, § 806). Thus the decision to deny parole and the rationale explaining that decision were made within the constraints of the parole statute in effect in 1971 and were therefore properly approved by the District Court's Magistrate.

Sayles contends, however, that the Board's reference to the nature of his 1971 crimes shows that its decision was made on impermissible general deterrence grounds. Sayles' contention misconstrues both the concept of general deterrence and the substance of the parole statute applied to him. As Magistrate Cohn noted, "it is permissible to consider the relationship of crimes committed to the likelihood of rehabilitation." *Sayles v. Welborn,* Civil No. 82–3109, slip op. at 2 (S.D.Ill. Jan. 20, 1983). In fact, the then parole statute itself requires the Board to give "due consideration * * * to the records and professional reports kept by the Department [as well as] all other aspects of the prisoner's situation." Ill.Rev.Stat.1969, ch. 108, § 206. Among the records that must be kept by the Department is a statement by the State's Attorney which includes "the facts and circumstances constituting the crime or offense whereof the prisoner * * * was convicted * * * and any other facts or circumstances which may tend to throw light upon the question as to whether such prisoner * * * is capable of again becoming a law-abiding citizen." *Id.* at § 203. It is clear that the State's Attorney filed such a report in this case, since the Board referred to it in its August 1982 rationale for denying parole (Pet.App. B). Thus the Board was not only permitted to consider the facts surrounding Sayles' 1971 crimes but was required by statute to give these facts "due consideration" in reaching its decision. The only constraint on the Board's consideration of these facts was the requirement that its consideration be focused specifically on the question of whether Sayles was rehabilitated rather than on the issue of general societal deterrence. *Welsh, supra.* As we have already shown, the Board complied with that requirement.

■ Sayles claims that even if the Board's rationale for its December 17, 1982, decision facially complies with *Welsh,* certain events suggest that the Board in fact relied on general deterrence criteria in reaching the decision and warrant this Court's finding the rationale illegal. In support of this claim, Sayles cites the fact that the Board did not issue its rationale for its informal November denial until December 17, 1982. It is true that a post-hoc rationale may warrant less judicial deference than a rationale issued simultaneously with the decision. *Clement v. Securities and Exchange Commission,* 674 F.2d 641, 644 (7th Cir.1982). But even when the Board's decision is subjected to greater scrutiny there is no basis for Sayles' claim.

On its own volition, the Board initiated the November 1982 parole review, even before Magistrate Cohn issued his November 22 decision as to the illegality of the Board's rationale for its August 1982 parole denial. Although Magistrate Cohn ultimately decided that said rationale did not comply with his order of July 22, 1982, he did not say that the August 1982 rationale definitely applied general deterrence criteria. *Sayles v. Welborn,* Civil No. 82–3109 (S.D. Ill. Nov. 22, 1982). In fact it is clear that the Board had made a good faith effort to base its August 1982 decision on special deterrence criteria.[4] Certainly it would have been preferable for the Board to postpone its informal November 1982 decision

---

4. For instance, the Board indicated that a significant reason for its August 1982 decision was that "the risk of further nonconforming conduct is too great for release at this time," a reason indicating a focus on Sayles' own rehabilitation rather than on general societal deterrence (Pet.App. B). While the Magistrate thought the Board should have been clearer in August 1982 that its denial was based on specific deterrence, he faulted the Board for not having stated "essential facts" for its decision (*ibid.*).

pending the issuance of Magistrate Cohn's November 22, 1982 order invalidating the Board's August 31, 1982, parole denial. However, since the Board had made the good faith effort in August to comply with *Welsh,* there is no basis to conclude that its proper rationale issued on December 17, 1982, was in fact motivated by impermissible general deterrence criteria.[5]

For the reasons stated above, the January 18, 1983, order of the magistrate upholding the December 17, 1982, parole denial is affirmed.

---

**5.** Petitioner's *other contentions on appeal do not merit discussion, but in the future, the Board should not "jump the gun" by informally announcing a decision without simultaneously including a rationale therefor.*

Respondents' *motion to strike filed herein on June 28, 1983, is granted and the Court* sua sponte *also strikes Argument IV of petitioner's reply brief. Petitioner's November 30, 1983, motion to file clarifying letter was granted on December 2, 1983.*