William J. PRATER

v.

U.S. PAROLE COMMISSION, Warden, U.S. Penitentiary.

Cause No. TH83–18–C.

United States District Court, S.D. Indiana, Terre Haute Division.

Dec. 9, 1983.

James J. Barrett, III, Pine Ridge, Ky., for plaintiff.

Sarah Evans Barker, U.S. Atty., Carolyn N. Small, Asst. U.S. Atty., Indianapolis, Ind., for defendant.

## ENTRY

DILLIN, Chief Judge.

This cause comes before the Court on the petitioner's petition for a writ of habeas corpus, the respondents' response seeking dismissal of the petition, and petitioner's motion for judgment on the pleadings. The Court, having considered the foregoing and being duly advised thereon, now dismisses the petition for the reason that the petition and exhibits attached show on their face that no evidentiary hearing is required and that petitioner is not entitled to the relief for which he prays. Rules 1(b), 4 Rules Governing Section 2254 Cases in the United States District Courts.

On June 12, 1973, petitioner was sentenced to life in federal prison upon his plea of guilty to the offense of conspiracy to injure, oppress, threaten or intimidate a United States citizen. The conspiracy, to which petitioner admits being a member, resulted in the murder of United Mine Workers official Joseph Yablonski, his wife, and his daughter on New Year's Eve, 1969.

Petitioner's initial parole hearing was held on February 3, 1982, at Terre Haute, Indiana, where he was then incarcerated. The two-person hearing panel recommended that petitioner be released on parole after service of 126 months, setting a presumptive release date of August 8, 1982. *See* Government Exhibit C at 1. Because petitioner had been sentenced to life imprisonment and because of the national media attention his case received, *see* Government Exhibit A, the hearing panel's recommendation was referred to the respondent Parole Commission on "original jurisdiction." *See* 28 C.F.R. § 2.17(b)(3), (4) (1982).

On March 24, 1982, the Parole Commission revised the hearing panel's recommendation and set a presumptive parole date of April 14, 1988, after service of 192 months in prison by petitioner. *See* Government Exhibit B at 1. In June, 1982, the Commission denied petitioner's appeal of this decision, affirming the 1988 parole date. The instant petition for writ of habeas corpus was filed on January 28, 1983, petitioner's administrative remedies having been exhausted.

In support of his motion for judgment on the pleadings, petitioner first argues the Parole Commission's denial of parole was based on its application of regulatory guidelines and statutory criteria which were not in effect at the time he committed his offense. Such application is therefore said to violate the *ex post facto* clause of the United States Constitution, Art. I, § 9, cl. 3. Secondly, petitioner argues that once these regulations and criteria were applied to him, it was done in such a way as to result in an arbitrary and capricious denial of parole. Finally, petitioner alleges that his due process rights were violated by the Parole Commission's failure to give him

timely notice of its reliance on certain documents in defining his offense behavior.

## I.

On March 24, 1982, the respondent Parole Commission revised the hearing panel's recommendation of parole for petitioner after service of 126 months, extending the presumptive length of service to 192 months. In its "Notice of Action" on this matter, the Commission stated that in light of "all relevant factors and information presented, it is found that your release at this time would depreciate the seriousness of your offense behavior." Government Exhibit B at 1.

There are two sources of the Commission's "depreciate the seriousness" reason for denial of parole. First, 28 C.F.R. § 2.13(d) (1982) provides:

(d) In accordance with 18 U.S.C. 4206, reasons for parole denial may include the following, with further specification as appropriate:

\* \* \* \* \* \*

(2) Release, in the opinion of the Commission, would depreciate the seriousness of the offense or promote disrespect for the law.

This regulation was originally adopted sometime after petitioner committed his offense.

In addition, 18 U.S.C.A. § 4206 (Supp. 1982), originally adopted as the Parole Commission and Reorganization Act, Pub.L. No. 94–233, § 2, 90 Stat. 219 (March 15, 1976), reads as follows:

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

18 U.S.C.A. § 4206 (Supp.1982).

Petitioner alleges that the application of the Commission's regulations and of the statutory criteria is in violation of the *ex post facto* clause because neither was in effect at the time he committed his offense.

■ With respect to the application of the Parole Commission's regulations to petitioner, it is true that the *ex post facto* prohibition is not limited to statutory changes. In *Rodriguez v. United States Parole Commission,* 594 F.2d 170 (7th Cir. 1979), the Court of Appeals held that the Commission's amendment of a regulation that determined the frequency of parole hearings was equivalent to a statute for purposes of the *ex post facto* clause:

When Congress has delegated to an agency the authority to make a rule instead of making the rule itself, the resulting administrative rule is an extension of the statute for purposes of the clause. What Congress cannot do directly, it cannot do by delegation. [citations omitted] ... 'Legislative' rules adopted by the commission pursuant to statutory power have the force and effect of law.

*Id.* at 173.

*Rodriguez* is distinguished from the present case by the nature of the administrative regulation at issue. In that case, the regulation prescribing the frequency of parole hearings was "viewed as tantamount to a statute for the purpose of determining whether its application to [the petitioner] runs afoul of the *ex post facto* clause," because it was viewed as "legislative" in nature. *Id.* at 174.

■ The instant regulations, on the other hand, are not legislative rules,

but an agency's setting up guidelines for itself to assure the uniform execution of its business. These guidelines are not law, but guideposts which assist the Parole Commission ... in exercising its dis-

cretion. Nor do these guidelines have the characteristics of law. They are not fixed and rigid, but are flexible. The Commission remains free to make parole decisions outside of these guidelines. *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir.1977); *see* 28 C.F.R. §§ 2.2(a)–(d), 2.18, 2.20(a), (c), (g) (1982); *see also Bush v. Kerr*, 554 F.Supp. 726, 733 (W.D.Wisc. 1982); *Richards v. Crawford*, 437 F.Supp. 453, 456 (D.Conn.1977). Because the Commission's regulations that are relevant to this case operate as mere flexible guideposts to aid the Commission in the exercise of its discretion, they lack the force and effect of statutory law and, therefore, are not subject to the prohibitions of the *ex post facto* clause.

The application of the statutory criteria for parole found in Section 4206 of Title 18 is more troubling, however, since there can be no doubt that these criteria are statutes subject to the *ex post facto* clause.

The proper starting point for analysis under the clause is the Supreme Court case of *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), in which the Court stated a two-pronged test for *ex post facto* legislation:

[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.... The presence or absence of an affirmative, enforceable right is not relevant ... to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the clause if it is both

retrospective and more onerous than the law in effect on the date of the offense. 450 U.S. at 29, 101 S.Ct. at 964 (citations and footnotes omitted).

■ The application of section 4206 to petitioner is a retroactive application of a penal statute under the precedents of this circuit. *See Bush v. Kerr*, 554 F.Supp. 726, 732 (W.D.Wis.1982) citing *Welsh v. Mizell*, 668 F.2d 328 (7th Cir.) *cert. denied* — U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). Thus, the first prong of the *Weaver* test is satisfied, and it becomes necessary to compare the law in effect at the time of the petitioner's offense with the law under section 4206 to determine whether the latter is "more onerous" than the former. *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964.

The conspiracy of which petitioner admits being a part achieved its object on December 31, 1969. This may be presumed to be the date of petitioner's offense. In 1969, the statutory guidelines for parole release stated:

If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole. 18 U.S.C.A. § 4203(a) (1969).

In 1976, Congress amended Title 18 of the United States Code with the Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219 (1976). Section 2 of the Act completely rewrote Chapter 311 of Title 18, dealing with matters of parole. Included in this amendment are statutory "parole determination criteria," presently encoded at 18 U.S.C.A. § 4206. Subsection (a)(1) of Section 4206 requires the Parole Commission to deny parole to a prisoner if it finds that release would "depreciate the seriousness of his offense or promote disrespect for the law." In the present case, petitioner was denied

parole because the Commission found that his release would depreciate the seriousness of his offense behavior. Government Exhibit B at 1.

In terms of the second prong of the *Weaver* test, for the application of the section 4206 criteria to violate the *ex post facto* prohibition, it must be determined that, relative to the law in 1969, the "depreciate the seriousness" standard works to "disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964.

█ It is at this point that Petitioner's *ex post facto* argument fails, because under the law as it existed in 1969, at the time of petitioner's offense, it would have been possible for the Board of Parole (predecessor to the Parole Commission) to deny parole for the reason that release would depreciate the seriousness of his offense. Thus, petitioner could not have been disadvantaged by his denial of parole for that reason in 1982.

In *Wiley v. United States Board of Parole*, 380 F.Supp. 1194 (M.D.Pa.1974), the Board of Parole applied its recently promulgated regulatory guidelines to a prisoner and denied him parole on the grounds that release would depreciate the seriousness of his offense. The prisoner argued that the Board could not properly rely on this reason for denial of parole because the seriousness of the offense and the deterrent effect of paroling the offender had already been taken into account by the sentencing judge. The district court rejected this argument:

> The seriousness of the offense and the effect parole of an offender may have on deterrence of criminal conduct, embodied in the 'depreciating the seriousness of the offense' reason given by the Board for denial of parole, clearly are a proper basis for denying parole since these factors are relevant to and *can be determinative* of whether the offender's release is compatible with the welfare of society, a criterion specifically mandated by 18 U.S.C.A. § 4203 [1969]. Thus, the Board is free to rely *in whole* or in part on

these factors in making an adverse parole determination.

380 F.Supp. at 1197 (emphasis added).

The *Wiley* decision makes clear that under the law as it existed at the time of petitioner's offense, a prisoner could be denied parole for the sole reason that his release would depreciate the seriousness of his offense. It follows that petitioner was not disadvantaged by denial of parole for that reason and that application of section 4206 to petitioner did not violate the *ex post facto* clause. Other decisions in this circuit are in accord. *See Garcia v. United States Board of Parole*, 557 F.2d 100, 105–06 (7th Cir.1977); *Bush v. Kerr*, 554 F.Supp. 726, 732–33 (W.D.Wis.1982) (distinguishing *Welsh v. Mizell*, 668 F.2d 328 [7th Cir.] *cert. denied* — U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 [1982]).

## II.

Petitioner next complains that even if the Parole Commission's application of its regulations and the statutory criteria was not *ex post facto*, nevertheless the Commission applied them erroneously resulting in an arbitrary and capricious decision to deny him parole and in denial of his due process rights. These claims are closely related.

Petitioner's due process claim consists of the argument that the Parole Commission's consideration of certain documents, namely the Bureau of Prisons Classifications Summary prepared in August 1973, and a "Post Sentence Report" prepared on June 30, 1982, denied him due process of law because: (1) The Parole Commission's reliance on these documents was not disclosed to petitioner prior to his initial parole hearing, which disclosure is assertedly required by 28 C.F.R. § 2.19(c); (2) the documents' description of petitioner's offense behavior, which was accepted and used by the Commission, was based on the indictment for petitioner's conspiracy case and on newspaper accounts, rather than upon testimony adduced at the conspiracy trial, statements by the petitioner, or some other reliable source; and (3) the description of petitioner's offense behavior con-

tained in the documents was materially false.

This last element of petitioner's due process claim also forms the basis for his claim that the decision to deny him parole was arbitrary and capricious, since the decision relied largely on a materially false description of his offense behavior and was otherwise not rationally supported in the record of his parole hearing.

The common element in petitioner's due process and "arbitrary and capricious" claims is his assertion that the description of his offense behavior upon which the Parole Commission relied was materially false.[1] In its notice of action dated March 24, 1982, the Commission described petitioner's offense behavior this way:

[Y]ou were a member of a conspiracy which resulted in three murders; you paid the 'triggerman' who actually did the killing $20,000 in union pension funds.

Government Exhibit B at 1.

In his petition for writ of habeas corpus, petitioner gives his version of his offense behavior. Although he admits that the conspiracy of which he was a part resulted in three deaths, he claims to have been aware only of the plan to murder Joseph Yablonski. He also believed the plan had been abandoned at the time the murders were actually committed. Although he admits his role in the conspiracy was to transfer union money, petitioner claims he did not pay the actual "triggerman," but rather transferred the money to another union official who recruited the killers. Petitioner also states that the amount of money involved was only $15,000 and that the source of the money had nothing to do with union pension funds, but rather the money came from a bogus "special fund" established on a pretense. *See* Petition for Writ of Habeas Corpus at 3b.

Taking his claims in the order in which he presents them, the first issue is whether the Commission's denial of parole was arbitrary and capricious because it relied on the allegedly false description of his offense behavior.

The Parole Commission's full statement denying petitioner parole, found in its Notice of Action dated March 24, 1982, was as follows:

Your offense behavior has been rated as Greatest II severity because you were a member of a conspiracy which resulted in three murders, you paid the "triggerman" who actually did the killing $20,000 in union pension funds. Your salient factor score is 10 (see attached sheet). You have been in custody a total of 119 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 52 plus months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that your release at this time would depreciate the seriousness of your offense behavior. Commission guidelines for Greatest II severity cases do not specify a maximum limit. Therefore, the decision in your case is based in part upon a comparison of the relative severity of your offense behavior with the offense behaviors and time ranges specified in the Greatest I severity category.

Government Exhibit B at 1.

■ Petitioner's quarrel with offense description of the Parole Commission exalts the trivial while ignoring the substantial. While conceding that he was a conspirator in a plot that resulted in three cold-blooded murders, petitioner trumpets error because the Commission claims he transferred $20,-

---

1. As noted above, the due process complaint is that petitioner was improperly denied notice of the Parole Commission's reliance on the Classification Summary and "Post Sentence Report." He alleges these documents to be the source of the Parole Commission's false description of his offense behavior. With proper notice, presuma-

bly, petitioner would have corrected the alleged errors in that description. Thus, the essence of his due process-notice complaint is that lack of notice harmed him by allowing the Commission to rely on a false description of his offense behavior.

000 to be paid to the killers whereas petitioner asserts it was only $15,000. Similarly he earnestly asserts that he did not deal with the killers directly—just a middleman. Likewise, it was not pension money but a secret "slush fund." On top of all of these, petitioner's assertion that he only intended a single murder not three strikes this reader as thoroughly and disgustingly lame.

The Commission denied parole because petitioner was an integral and willing participant in a conspiracy which he knew had as its purpose assassination. How much, where the money came from, who he dealt with are irrelevant quibbles in the light of the undisputed nature of this first proposition. Further, having helped to finance an assassination, it will not benefit petitioner here to claim he only intended one, not three.

These errors, if any there be, were irrelevant to the Commission's decision that release now would depreciate the seriousness of petitioner's offense. The Commission is entitled to consider the totality of events that occurred on New Year's Eve 1969, events that petitioner conspired to bring about. *Billiteri v. U.S. Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976). The Commission was not arbitrary in its rejection of petitioner's efforts to minimize his personal role since there is no dispute that he had admitted a role in the murders. It is not arbitrary and capricious, when considering the depreciation of the seriousness of the offense, to look at what that offense was as well as petitioner's role in bringing it about.

### III.

In view of the foregoing, petitioner's assertion that he was denied due process because he was not permitted access to certain documents prior to his parole hearing fails as well. Petitioner asserts that had he had access to these documents he would have disputed the erroneous assertions made by the Commission. As determined above these errors, if any there were, were insignificant in the Commission's determination. Moreover, the initial hearing summary shows on its face at page 1 that petitioner did dispute the findings he complains of here. Thus, he was not denied due process of law.

Accordingly, the Court finds that petitioner is not entitled to habeas corpus relief and that his petition must be and hereby is dismissed.