**STATE of Minnesota, Respondent,**

v.

**Hugh MORSE, Appellant.**

**No. CX–86–858.**

Court of Appeals of Minnesota.

Jan. 6, 1987.

Review Denied Feb. 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Carol Grant, Kurzman, Grant, Manahan, Minneapolis, for appellant.

Heard, considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Hugh Morse appeals from an order denying his petition for writ of habeas corpus. Appellant alleges he was denied equal protection by being denied parole, denied a target release date, and prohibited from transferring to the Lino Lakes sex offender treatment facility. Appellant claims the Minnesota Corrections Board (MCB) denied him due process by ignoring his institutional record and psychological evaluations in the parole decision-making process. In addition, appellant contends the MCB encouraged him to dispose of two interstate detainers by suggesting he would be granted parole once the detainers were removed.

In an order dated November 14, 1986, this court denied appellant's motion to expand the record on appeal on grounds of newly discovered evidence. The evidence was either already part of the record or irrelevant for purposes of review. We affirm on all issues.

## FACTS

Appellant pleaded guilty to second degree murder, in violation of Minn.Stat. § 619.08 (1961), and was sentenced to life imprisonment in the Minnesota Correctional Facility-Stillwater on December 15, 1961. The statute provided for life imprisonment when the murder occurred during a sexual assault. Subsequently, Minn.Stat. § 619.08 was repealed. The same offense is now defined as murder in the first degree, Minn.Stat. § 609.185(2) (1984), with a statutory sentence of life imprisonment. Appellant was also sentenced to a consecutive prison term of ten years to life for first degree burglary.

Appellant admitted or was convicted of several other crimes. Appellant admitted he murdered a woman in July 1961 in Alabama; he was convicted of murdering a sixty-nine year old woman in Washington in September 1960; he was convicted of murdering another woman in Washington in November 1959; he was convicted of

assault and attempted rape of a woman in Washington October 1960; he admitted to burglary and assault in California in November 1960; he admitted to two separate burglaries and attempted rapes in Georgia April 1961; he admitted to a burglary and the stabbing of a woman in Ohio in May or June of 1961; he admitted to child molestation in Minnesota in October, 1961; he admitted to numerous other burglaries, as well as having exposed himself to women and girls.

In July 1978, appellant appeared before a three-member panel of the MCB for his annual review. The MCB advised appellant to reappear before the MCB if there were any new developments regarding his Washington and Alabama [1] detainers. The MCB made no parole eligibility decision during that review.

Appellant's attorney asked Leslie Green, the chairman of the MCB, what the MCB would do regarding appellant's parole eligibility if the two interstate detainers were removed. Appellant's attorney testified Green had told appellant he had to remove the detainers in order to be eligible for parole or he would be paroled to his detainers. Green told appellant's attorney he could not bind the actions of any future MCB, but the detainers should be lifted in order to go ahead with a parole plan. Green testified he never promised removal of the detainers would result in parole.

On January 21, 1979, appellant removed his Washington detainer by pleading guilty to two counts of first degree murder and one count of first degree assault. Appellant was sentenced to life probation on each count and returned to Stillwater. The Alabama detainer, filed in 1961, was also dismissed. Appellant testified that he incurred approximately $25,000 worth of expenses and attorney's fees to remove the detainers. This included round-trip tickets to Washington and accommodations for appellant, his attorney, and a guard.

On October 28, 1980, a full five-member MCB hearing was held for appellant's an-

---

1. The Alabama and Washington charges were first degree murder.

nual review. The MCB refused to parole appellant at that time because of his involvement in several murders across the country. The MCB found appellant was a danger to the public safety, "particularly of unguarded women." The MCB also stated it needed complete psychological data demonstrating it could safely release appellant.

Appellant's attorney testified he wanted to be present at the October 28, 1980, hearing to insure the parole decision was made for proper, rather than political, reasons. He was not allowed to observe or tape record the hearing. Counsel testified he contacted Green to find out why the situation had so radically changed. According to appellant's attorney, Green said that in light of the "Hodo incident" he was never again going to allow a serial murderer to be paroled. Richard Hodo, convicted of two second degree murders, was paroled after approximately twelve years. Hodo subsequently killed his wife and children. His release caused a great deal of negative publicity for the MCB. Green denies making any reference to Hodo. Douglas told the MCB appellant wanted a target release date assigned so he could be eligible for transfers or programs within the prison. The MCB refused to set a target release date.

In September 1981, a three-member MCB conducted appellant's annual review. The psychological report provided by Dr. Duffy stated that if appellant should experience extreme rejection from his wife or others, he would probably act out violently. On November 18, 1981, the full MCB affirmed the panel's decision based on the nature of the offense, appellant's prior record, his institutional record, and overall public safety concerns. Green testified that because it is impossible in an institutional setting to test appellant's potential to recommit, greater weight is placed upon psychological evaluations and prior record than on institutional activities. The MCB met with appellant after the review to explain to him the decision to deny him parole and a target release date.

On March 9, 1982, appellant requested resentencing in conformity with the sentencing guidelines. The district court denied his petition. The supreme court affirmed. *Morse v. State*, 326 N.W.2d 2 (Minn.1982).

On January 4, 1983, appellant requested an annual review hearing. All parties received notice and access to the documents to be reviewed. Appellant was represented by counsel and the hearing was taped. Appellant was given the opportunity to contest the evidence, but did not. The Commissioner of Corrections Advisory Panel, successor to the statutorily abolished MCB, unanimously voted to deny parole. Although the panel found appellant had adjusted well to the institution and was considered a "good" inmate, the panel still felt that supervised release or a target release date would not be appropriate given the extreme nature of appellant's offenses.

The Commissioner fully explained the decision to appellant, and delivered a written copy to him. The Commissioner set August 1993 as the date to re-evaluate appellant's case and determine whether to assign a target release date or consider parole. The Commissioner considered annual reviews unnecessary, based on the nature of appellant's offenses.

Appellant filed a petition for writ of habeas corpus in district court. On April 24, 1986, the court denied the petition. The court found the MCB and the Commissioner provided appellant with procedural due process by allowing representation by counsel and an opportunity to present evidence. It found the MCB properly considered a number of factors in determining parole eligibility and concluded appellant's substantive due process rights were not violated. Moreover, the refusal to grant parole was based on a rational and a legitimate government interest in view of appellant's multiple killings and random sexual assaults on women. The court held appellant did not establish that Green or any other parole authority promised appellant would be granted parole in the future if the detainers were removed.

## ISSUES

1. Was appellant denied equal protection when excluded from the class of inmates assigned a target release date, transferred to the Lino Lakes sex offender treatment program, and eligible for parole?

2. Did the MCB's assignment of greater weight to the severity of appellant's offenses than to his institutional record, constitute denial of due process?

3. Did the evidence support the trial court's finding that appellant did not remove his detainers in reliance on the MCB's promise of future parole?

## ANALYSIS

### I.

*Equal protection*

Appellant argues he has been denied equal protection by being arbitrarily excluded from the class of inmates transferred to Lino Lakes and from inmates convicted of second degree murder but subject to release. Appellant claims that every other person who has been in a Minnesota prison more than fourteen years, including people sentenced to life imprisonment for murder in the first degree, has been assigned a target release date.

The State cannot refute appellant's argument that he is the only person in the Minnesota prison system who, after serving at least fourteen years of a life sentence, has not been granted a target release date. The State asserts, however, the nature of the offenses and strong public safety concerns provide a rational basis for treating appellant differently than other inmates.

■ Parole boards are not constitutionally mandated to treat all murderers equally simply because they were convicted of the same crime. *United States ex rel. King v. McGinnis,* 558 F.Supp. 1343, 1348 (1983). Absent intentional discrimination, a Board's more favorable treatment of some convicted murderers over others does not give rise to an equal protection claim. *Id.* The State need only show some rational basis for the difference in parole classification. *State ex rel. Taylor v. Schoen,* 273 N.W.2d 612, 620 (Minn.1978).

■ The refusal of the MCB and the Commissioner to grant appellant supervised release was based on a rational and legitimate government interest, a concern for public safety. A rational basis for different treatment is found in the nature of appellant's offenses, the MCB's inability to predict appellant's behavior outside the institution, and appellant's psychiatric evaluations.

Even if appellant is correct that he is the only inmate without a target release date, statistics alone do not give rise to a constitutional interest. *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). "The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged * * *." *Id.* Appellant does not assert any statute or guideline entitling him to a target release date. He argues from the fact that all others similarily situated have been assigned a target release date. This argument is practical, but, without more, not constitutionally compelling.

### II.

*Due process*

■ Parole decision-making authorities have broad discretion in determining whether to grant parole and setting conditions for parole. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Review of those decisions is limited to determining whether there has been a clear abuse of that discretion. *State v. Austin,* 295 N.W.2d 246, 249–50 (Minn.1980).

Appellant contends statutes, rules, regulations, and policy create an expectation that an inmate's internal adjustment and institutional progress will be given significant weight in the parole decision-making process. Appellant refers to Parole Deci-

sion-Making Guidelines 7–104.2(b), which require a thorough consideration of not only an inmate's criminal history, but his entire case history, risk of failure on parole, and any aggravating or mitigating factors. Appellant claims the MCB focused solely on appellant's past offenses and not on his institutional record.

The trial court found the MCB's decision not to parole appellant was based on the nature of appellant's offense, his prior criminal record, his institutional record, and overall public safety concerns. At the MCB's request, appellant underwent complete psychological testing. The MCB thoroughly reviewed the test results prior to the hearing.

The court found the MCB and the Commissioner provided appellant with procedural due process by allowing him representation by counsel and an opportunity to present evidence.

Green testified, in part, as follows:

During the process, the Commissioner and any of the advisory panel members that would like to talk to the inmate and his attorney in the room, ask if they have anything they would like to add or any statement they would like to make. After that is done, the room is cleared and the Commissioner discusses the matter with his advisory panel and then formulates his decision. Everyone is then returned to the room and the Commissioner explains verbally to the inmate what the decision is and the rationale for it, and then he indicates to the inmate that that will be reduced to written form and transmitted to them within thirty days. It is what Mr. Morse has done and may do in the confines of a victim's home when they are unprotected that are of most concern. And we can't, in our institution, put together a situation that can test that; whether or not they have the skills to not murder, to not rape. And so you put much more weight on prior record, psychological evaluations and things of that nature than you do on a person's institutional activity.

Dr. Duffy, a consulting psychologist, interviewed appellant in September 1981. The report, in part, states:

[T]he only data we do have on Mr. Morse is his extreme violence in the past and as such, the only valid prediction and perhaps the only sensible prediction at this point in time that we could make would be that having been extremely violent in the past we can only expect the same to occur in the future. Although I can make that statement with some degree of certitude, I must admit to a degree of uncomfortableness in making such an absolute statement. The fact is that 20 years in the institution have produced some changes in this individual; unfortunately, we have no way to measure these changes in a reasonable and satisfactory manner. Additionally, we have the observation that once an individual has crossed the line between peacefulness and violence that generally it is easier for them the second time to cross that line to violence than it was the first time.

In 1980, Dr. Osekowsky, also a consulting psychologist, reported the following:

He was compulsively driven to that assaultive behavior, and in a prison setting, there is no way to test the persistence of that compulsion. The only way is to put the public at risk, since he does not accost females who are protected by others. I suggest that he be referred to the Sex Offender Program at Lino Lakes and that another decision be made upon successful completion of that program.

The trial court's findings of fact will not be set aside unless clearly erroneous. *State, Department of Highways v. Beckey*, 291 Minn. 483, 487, 192 N.W.2d 441, 445 (1971). The evidence supports the MCB's denial of parole, a decision that was made after consideration of several significant factors. The due process requirements of *Greenholtz* were satisfied.

Appellant argues a state-created liberty interest in a work program arises when a prisoner meets the eligibility requirements for that program. Appellant claims that because he meets all requirements for

transfer to Lino Lakes, except for a target release date, refusal to assign him a target release date violates his due process rights.

■ There is no constitutionally mandated right to enter a discretionary parole release program. *Greenholtz*, 442 U.S. at 8, 99 S.Ct. at 2104. However, "[a] state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Connecticut Board of Pardons*, 452 U.S. at 463, 101 S.Ct. at 2463. The existence of a statutorily created liberty interest depends on the statute structure and language and "must be decided on a case-by-case basis." *Id.* at 466, 101 S.Ct. at 2465 (citation omitted). Whether the parole guidelines create a liberty interest in a target release date depends, therefore, on the language of the guidelines.

■ The Parole Decision-Making Guidelines 7–104.5(h) state, in part:

Persons serving mandatory sentences: The Board will not assign target release dates to persons serving mandatory minimum sentences for murder in the first degree until they have served the mandatory minimum. Likewise, the Board will not set target release dates for persons serving consecutive multiple minimum sentences.

A first degree murderer is sentenced to a mandatory minimum sentence of life imprisonment. Minn.Stat. § 609.185. The guidelines do not create a liberty interest. On the contrary, an inmate serving a mandatory sentence for first degree murder has no right to be assigned a target release date.

Not all inmates in Minnesota receive target release dates. *Wooldridge v. State*, 342 N.W.2d 636 (Minn.1984) (resentencing denied due to petitioner's record as a violent offender and record of recidivism; no target release date assigned); *Rieck v. State*, 326 N.W.2d 3 (Minn.1982) (resentencing denied due to petitioner's record as a violent offender and record of recidivism; no target release date assigned); *Rue v. State*, 324 N.W.2d 370 (Minn.1982) (resentencing denied due to petitioner's record as a violent offender and record of recidivism; no current target release date); *State v. Cain*, 322 N.W.2d 182 (Minn.1982) (resentencing denied due to petitioner's record of recidivism and chemical dependency; current target release date unclear from file).

■ Appellant is presently ineligible for transfer to Lino Lakes because he has not been assigned a target release date. The MCB did not, however, clearly abuse its discretion in not setting one. Since there is no constitutionally mandated right to enter a discretionary parole release program, *Greenholtz*, 442 U.S. at 8, 99 S.Ct. at 2104, we hold appellant has not been denied due process by being refused transfer to Lino Lakes.

### III.

*Promissory Estoppel*

Appellant contends the doctrine of promissory estoppel applies to enforce the MCB's alleged promise of parole upon removal of his detainers. Appellant claims he relied to his detriment on the promise of parole when he spent $25,000 to have the detainers removed.

The court found appellant did not establish Green or any other parole authority made any promises to grant parole in the future once appellant's detainers were removed. Green claims he made no promises and appellant's attorney admitted he knew Green had no authority to bind the MCB. Counsel testified as follows:

[A]lthough [Green] couldn't bind the actions

of any future Board because he didn't know if the members would be the same at that time, he felt the time was right for Mr. Morse to be paroled, [and] we should go forward and get those detainers lifted.

Green testified as follows in regard to a promise of parole:

The fact of the matter is that I can't control the Board members. And there are five members that vote. And I had

never told them that it would result in parole.

I'm quite certain I would not have made any promises to any attorney about whether or not the Board would release anybody.

 The findings of the court in a habeas corpus appeal will be sustained if they are reasonably supported by the evidence. *Tureson v. Tureson,* 281 Minn. 107, 112, 160 N.W.2d 552, 556 (1968). We find no reason to disturb the finding based on the testimony of Green and Douglas. Even if the evidence had been less supportive of the State's position, an informal statement of a MCB member, outside the MCB's normal deliberations, would not legally bind the entire MCB.

### DECISION

The MCB's decision to treat appellant differently from other first degree murderers is not a violation of equal protection because it is rationally based on the legitimate government interest of public safety. The MCB's refusal to grant target release date after considering appellant's case history and offenses did not constitute denial of due process. The evidence supports the court's finding that appellant did not remove his detainers in reliance on any promise by the MCB of future parole.

Affirmed.